McCLEAN (HUIDEKOPER v.). See Case No. 6,852.

McCLEAN (MARSTELLER v.). See Cases Nos. 9,138, 9,139, and 9,140.

---

### Case No. 8,692.

#### McCLEAN v. MILLER.

[2 Cranch,. C. C. 620.] [1]

Circuit Court, District of Columbia. Nov. Term, 1825.

PARTNERSHIP—DISSOLUTION — DEBTS — EFFECTS— CREDITOR—NEW ADVANCES—GOOD FAITH.

Upon the dissolution of a mercantile firm, if it be agreed that the acting partner shall take the effects and pay all the debts of the firm, and this be known to the creditor of the firm, he cannot, with a good conscience, take a lien on the joint effects for new advances made by him to the acting partner on his own individual account, so as to exhaust the joint effects, and leave the retiring partner liable for the old joint debt.

This was a bill in equity, filed on the 31st of January, 1818, by Daniel McClean, in his lifetime, to enjoin proceedings on a judgment at law obtained against him by the defendant, Mordecai Miller, for $259.55, with interest from the 1st of July, 1816, and costs. An injunction was granted by one of the judges in vacation, and upon the filing of the answer, and upon hearing a motion to dissolve the injunction, the court refused to dissolve it, and continued it until final hearing, and the cause was returned to the rules for further proceedings. At April term, 1819, it was set for hearing on bill, answer, and exhibits, and at April term, 1820, the court decreed a perpetual injunction, but on the defendant's motion gave him leave to move at the next term for a reconsideration of the cause. At November term, 1820, the court ordered the decree to be set aside, the cause to be re-docketed, and leave to both parties to take depositions. At the May term, 1823, the complainant's death was suggested, and his executors, Norman R. Fitzhugh and Jacob Douglass, were made parties. At November term, 1825, the cause came on to be heard on the bill, answer, general replication, and depositions, and the court decreed a perpetual injunction.

.CRANCH, Chief Judge. By the terms of the dissolution of the partnership between Cawood and McClean, the whole joint effects were transferred to Cawood, who undertook to pay the joint debts. These facts were known, at the time, by the defendant, Miller, who then had a joint claim against the copartners. With this knowl-

edge he could not, with a good conscience, collude with Cawood, in applying the joint funds to a new debt contracted with Cawood, leaving McClean liable to pay the joint debt out of his separate estate. He knew that McClean had deposited those funds in the hands of Cawood, to pay the joint debt, and that Cawood had undertaken so to apply them. If the joint funds were transferred to Cawood, so was the debt. Mr. Miller had no right to separate them. The same act, which made Cawood master of the funds, made him debtor for the debt. It is like a trust. A party obtaining possession of the trust-fund, with a knowledge of the trust, is bound to see it executed to the extent of the funds which come to his hands. If Mr. Miller, knowing the facts, took the funds as security for new advances made to Cawood, it was so far to be considered in equity, as a fraud upon McClean, as to postpone his (Mr. Miller's) security upon the new contract with Cawood, to that upon his old claim against Cawood and McClean.

This is the view which the court has always taken of the case, and there is nothing in the affidavit or deposition of Cawood, to which the attention of the court was called at the last term, to vary that view. Mr. Miller, in his answer, fully admits his knowledge of the terms of the dissolution, as they are alleged in the bill. That knowledge is decisive of the case. Independent, however, of that view of the subject, the account rendered by Mr. Miller to Mr. McClean, and exhibited with the bill, shows (when the several items are arranged according to the natural order of their dates,) that the joint debt was paid. It appears that on the 5th of April, 1816, Mr. Miller had received from the joint funds, more than enough to discharge the whole of his joint claim against Daniel Cawood & Co., and of his separate claim against Daniel Cawood; so that the joint debt was in fact paid. It is not, however, necessary to reply on this ground, as we consider the former view of the case conclusive against the defendant. The former decree of the court, perpetuating the injunction, must stand confirmed.

THE COURT (THRUSTON, Circuit Judge, absent,) decreed a perpetual injunction.